UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

KAREN CREEL,

                  Plaintiff,

       -v-

SEQUENT (FLORIDA) LLC, et al.,

                 Defendants.

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/27/2026

26-cv-2778 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

    Interpleader Plaintiff-Claimant Karen Creel ("Creel") filed this interpleader action on April 6, 2026, ostensibly to settle the rights to $1.096 million in commissions she received as an employee of Interpleader Defendant-Claimant Sequent (Florida) LLC ("Sequent"). Dkt. No. 1 ("Compl.") ¶¶ 18–20. Creel is a citizen of Florida who resides in both Florida and New York. *Id.* ¶ 6. She is a wealth manager, insurance professional, and trusts and estates lawyer. *Id.* ¶ 21. Creel names Sequent as a defendant-claimant because it has claimed to be a rightful owner of the funds and has demanded that Creel turn over the commissions. *Id.* ¶ 38. To invoke the federal interpleader statute, she also names the entities who paid the commissions as potential claimants on the theory that Sequent has made statements to those entities that the commissions remain due to Sequent and thus that the entities may also demand repayment of those commissions (although presumably to pay them over to Sequent). *Id.* ¶ 39. Those entities are Interpleader Defendants-Claimants New York Life Insurance Company ("NY Life"), Corebridge Financial, Inc. ("Corebridge"), Guardian Life Insurance Company of America ("Guardian"), Pacific Life Insurance Company of America ("Pacific Life"), Lincoln National Life Insurance Company ("Lincoln"), Planning Alliance, and Gentry Partners Ltd. (collectively, the "Interpleader

Defendant Insurance Companies," and with Sequent, the "Interpleader Defendants"). *Id.* ¶¶ 8–14.

NY Life has moved to be dismissed from the action, disclaiming any and all rights, title, interest, claims or entitlements to the funds or property that are the subject of the action. Dkt. No. 51.[1] Guardian has answered, denying, among other things, the allegation that Sequent has contacted it to inform it that the commissions were paid to the incorrect party and that it remains liable. Dkt. No. 41 ¶ 36. The other Interpleader Defendants have not yet responded.[2]

Creel seeks an order: (1) permitting her to pay into the registry of this Court the $1.096 million; (2) discharging her from further liability with respect to that fund; (3) restraining the Interpleader Defendants from initiating any action or proceeding in any other court with respect to recovery of the property; (4) requiring the Interpleader Defendants to interplead and establish their rights to the money; (5) declaring that Creel is legally entitled to the money; (6) awarding her costs and fees; and (7) awarding any other relief the Court deems equitable and proper. Compl. at 10.

Sequent moved to transfer the case under 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of Florida on April 17, 2026. Dkt. No. 25. Plaintiff opposes the motion, *see* Dkt. No. 36, and Sequent has submitted a reply memorandum of law in further support of the motion, Dkt. No. 43. No other party opposes the motion. For the reasons that follow, the motion to transfer is granted.

**LEGAL STANDARDS**

---

[1] Creel has consented to the motion. Dkt. No. 51.
[2] Both Lincoln and Pacific Life submitted unopposed motions for extensions of time to respond to the complaint, Dkt. Nos. 44, 49, which the Court granted, Dkt. Nos. 45, 50.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) "codifies the doctrine of *forum non conveniens* for the federal system and provides for 'transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action.'" *In re Bystolic Antitrust Litig.*, 2021 WL 148747, at *2 (S.D.N.Y. Jan. 15, 2021) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). The moving party bears the "burden of making out a strong case for transfer" by clear and convincing evidence. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010). "In deciding a motion to transfer, a court may consider material outside of the pleadings." *Mohsen v. Morgan Stanley & Co. Inc.*, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013); *see also Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003) ("The defendant must support [a Section 1404(a)] motion with affidavits and other materials outside the pleadings."); *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 335 (S.D.N.Y. 2025).

Courts have broad discretion to transfer cases on an individualized, case-by-case basis. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988). In considering a motion to transfer venue, the court engages in a two-part inquiry: First, the court asks "whether the action sought to be transferred is one that 'might have been brought' in the transferee court." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (quoting 28 U.S.C. § 1404(a)). "[F]or the purposes of section 1404(a), an action might have been brought in another forum if, at the time the action was originally filed,

the transferee court would have had subject matter and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." *Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 213 (S.D.N.Y. 2024) (quoting *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004)).

If the action could have been filed in the proposed transferee district, the court then moves to the second step and evaluates "whether transfer is warranted using several factors relating to the convenience of transfer and the interests of justice." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 394; *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016). This second step requires the court "to weigh in the balance a number of case-specific factors." *Stewart*, 487 U.S. at 29 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "Among the factors to be considered in determining whether to grant a motion to transfer venue 'are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.'" *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112 (quoting *D.H. Blair*, 462 F.3d at 106–07). "The Court also considers '[8] the forum's familiarity with the governing law . . . and (9) trial efficiency and the interests of justice based on the totality of the circumstances.'" *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, 2022 WL 17067984, at *5 (S.D.N.Y. Nov. 17, 2022) (quoting *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006)).

The Supreme Court has held that an agreement by the parties that a particular forum shall have "exclusive jurisdiction" over disputes is a "significant factor that figures centrally in the

4

district court's calculus" under Section 1404(a), but not necessarily a dispositive one. *Stewart*, 487 U.S. at 29. Where the parties have agreed to such a clause that sets venue elsewhere, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). The Supreme Court has also clarified that in such circumstances, the "plaintiff's choice of forum merits no weight," the Court "should not consider arguments about the parties' private interests," and "the district court may consider arguments about the public-interest factors only." *Id.* at 64.

"The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). "The factors do not comprise an exclusive list, and they should not be applied mechanically or formulaically but rather to guide the Court's exercise of discretion." *Matthews v. Cuomo*, 2017 WL 2266979, at *2 (S.D.N.Y. May 1, 2017).

**ANALYSIS**

**I.      The Southern District of Florida Is a Proper Transferee Forum.**

This is an unusual case under 28 U.S.C. § 1404(a) in that Creel brings this action solely as a statutory interpleader under 28 U.S.C. § 1335, and the parties whom she names are "claimants" rather than defendants. That Creel invokes Section 1335 does not deprive claimants of the right to seek transfer or this Court of its authority to transfer the case in the interest of justice if there is another forum that would be more convenient for the parties and witnesses. Section 1404(a) applies to "any civil action." 28 U.S.C. § 1404(a); *see Van Dusen*, 376 U.S. at 616 (Section 1404(a) "empowers a district court to transfer 'any civil action' to another district

5

court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice").

This action could have been brought in the Southern District of Florida.  Section 1335 vests the district courts with "original jurisdiction of any civil action of interpleader or in the nature of interpleader" filed by a person "having in his custody or possession money or property of the value of $500 or more," where "[t]wo or more adverse claimants, of diverse citizenship as defined" in Section 1332 of Title 28 of the United States Code, "are claiming or may claim to be entitled to such money or property[,] . . . and if [] the plaintiff has deposited such money . . . into the registry of the court."  28 U.S.C. § 1335(a)(1).  The interpleader statute "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."  7 Wright & Miller's Federal Practice & Procedure § 1704 (3d ed. 2026); *see Vertiv Grp. Corp. v. Rivera*, 2024 WL 4269555, at *2 (S.D.N.Y. Sept. 20, 2024) ("Interpleader is an equitable device intended to protect a stakeholder . . . from 'double liability or vexatious, conflicting claims.'" (quoting *Bank of N.Y. v. First Millenium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010))).  It can also "be used to protect the claimants by bringing them together in one action and reaching an equitable division of a limited fund."  7 Moore's Federal Practice § 1702 (3d ed. 2024).

To those ends, the federal interpleader statute contains broad provisions with respect to venue and personal jurisdiction.  "Any civil action of interpleader or in the nature of interpleader under section 1335 . . . may be brought in the judicial district in which one or more of the claimants reside."  28 U.S.C. § 1397; *see Doe v. Ejercito de Liberacion Nacional*, 2015 WL 9077344, at *4 (S.D.N.Y. Dec. 16, 2015).  Nationwide service of process and personal

jurisdiction is permitted.  "[A] district court may issue its process for all claimants [and s]uch process . . . shall be returnable at such time as the court or judge thereof directs" and may be served anywhere "the claimants reside or may be found."  28 U.S.C. § 2361.; *cf.* 7 Wright & Miller's Federal Practice & Procedure § 1711 (3d ed. 2026) ("Section 2361 allows nationwide service in actions properly brought under the interpleader statute . . . .").

Venue for this action properly lies in the United States District Court for the Southern District of Florida, and that court would have subject matter jurisdiction and personal jurisdiction over the claimants.  As alleged in the complaint, Creel is a citizen of Florida; Sequent is a citizen of Switzerland; and the Interpleader Defendant Insurance Companies are citizens of New York, Delaware, Texas, Nebraska, California, Indiana, and New Jersey.  Compl. ¶¶ 7–14.  Because "two or more" of the claimants are diverse as that term is defined in 28 U.S.C. § 1332, *see* 28 U.S.C. § 1335(a), the federal courts have subject matter jurisdiction.  *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1966) (only "minimal diversity" is required under the interpleader statute).  Creel resides in Florida and is a claimant, so venue is properly laid there. And, under 28 U.S.C. § 2361, that court can exercise personal jurisdiction over all claimants.

## II.     The Public and Private Factors Favor Transfer.

The determination of whether a court vested with jurisdiction should transfer a case to another district in the interest of justice rests on an analysis of case-specific factors listed above. *In re Cuyahoga*, 980 F.2d at 117; *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 575 (S.D.N.Y. 2014).  The facts before the Court at this juncture to be analyzed in application of those factors are as follows.

Creel is a citizen of Florida and a resident of both Florida and New York.  Compl. ¶ 6. Sequent is a "Florida limited liability company," with an address in Miami, Florida.  Dkt. No. 25-1 at 1.  The fund at issue in this case was generated while Creel was working for Sequent

pursuant to an offer of employment for her to "overs[ee] the operational build out of Sequent (Florida)" from its Florida office. Dkt. No. 36-1 ¶ 75.[3] In accepting that offer of employment, Creel understood her role to be "to serve the Latin American market from a Miami office." *Id.* ¶ 98. Creel listed Florida as her state of residence for tax purposes with Sequent. Dkt. No. 43-2. While Creel received communications from Sequent leading her to accept its offer of employment while present in New York, Dkt. No. 36-1 ¶ 15, in-person meetings with respect to her potential employment also took place in Miami, *id.* ¶¶ 30, 33.

Creel's employment agreement with Sequent is "contingent" upon Creel's "execution of Sequent's Employee Confidentiality and Non-Compete Agreement." Dkt. No. 25-1 at 3. The confidentiality and non-compete agreement provides that Creel "will not, in any geographical area in which Sequent conducts its business or sells or markets its services, directly or indirectly, either for herself or any other person or entity[,] . . . interfere with Sequent's relationship with any such customer or client." Dkt. No. 25-2 at 3. The agreement requires Creel, upon voluntary or involuntary termination, to "provide or return to Sequent any and all Sequent property." *Id.* at 4. The agreement also contains a broad mandatory forum selection clause. It states that "[a]ny action or proceeding by either of the Parties arising out of, related to, or to enforce this Agreement shall be brought only in any state court located in Miami-Dade County, Florida, or in the United States District Court for the Southern District of Florida, Miami Division." *Id.* at 5. It continues that "[t]he parties irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue." *Id.*

---

[3] Creel attaches her complaint in the related action, *Creel v. Martin*, No. 26-cv-3626 (S.D.N.Y. filed May 1, 2026), as an exhibit to her opposition to the motion to transfer venue. Dkt. No. 36-1. The Court accepts those allegations as true for purposes of this motion.

Besides the fact that Creel maintains a residence in New York and had discussions with Sequent about employment while she was in New York, the only connection that this lawsuit has with New York is that NY Life, Guardian, and Gentry Partners are alleged to be New York citizens, *id.* ¶¶ 8, 10, 14.  As noted, NY Life has moved to be dismissed from the action, disclaiming any and all rights, title, interest, claims or entitlements to the funds or property that are the subject of the action, Dkt. No. 51, and Guardian has filed an answer in which it denies Plaintiff's allegation that Sequent contacted it and informed it "that the commissions were paid to the incorrect party and that [Guardian] remain[s] liable to Sequent for the payment of commissions," Dkt. No. 41 ¶ 36.

Additionally, shortly before Creel filed this proceeding, Sequent notified her in March of 2026 of its belief that she owed Sequent over $400,000 in commissions.  Compl. ¶ 33; *see* Dkt. No. 25-4 (email communications between Sequent and Creel with respect to the missing funds). It terminated Creel's employment at the end of that month.  Compl. ¶ 35; Dkt. No. 25-5 (employment termination letter).  It also "threatened" Creel with civil action concerning the funds at issue, and "demanded that she turn over to Sequent" that money.  Compl. ¶ 38; Dkt. No. 25-6 (civil theft demand letter).  Creel then filed this action on April 6, 2026.  Dkt. No. 1.

### A.     Plaintiff's Choice of Forum

Section 1404(a) permits transfer in the interest of the parties and the witnesses.  28 U.S.C. § 1404(a).  As between a plaintiff and defendant who are disputants in a lawsuit, the tie goes to the plaintiff.  *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71–72 (2d Cir. 2001). "Plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous . . . [under] the plaintiff's venue privilege." *Manchin v. PACS Group, Inc.*, 2025 WL 1276569, at *8 (S.D.N.Y. May 1, 2025) (quoting *Atlantic Marine*, 571 U.S. at 63).  There is a presumption in favor of the plaintiff's choice of forum.  *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d

Cir. 2004).  Where the named plaintiff is not the real party in interest (or is one of many with an interest), the strength of that presumption is weakened.  *Koster v. Lumberman's Mut. Co.*, 330 U.S. 518, 524 (1947); *In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995); *Manchin*, 2025 WL 1276569, at *8; *In re Bystolic Antitrust Litig.*, 2021 WL 148747, at *3.

Ordinarily, in an interpleader action, the choice of forum of the named plaintiff would enjoy no weight.  *See Coe*, 724 F. Supp. 3d at 214; *Wilmington Trust Co. v. Gillespie*, 397 F. Supp. 1337, 1341 n.3 (D. Del. 1975) ("In an interpleader action . . ., the named plaintiff has no real interest in where the dispute between the claimants is litigated; thus there is no reason to defer to its selection of forum."); *Emps. Sav. Plan of Mobil Oil Corp. v. Vickery*, 99 F.R.D. 138, 144 (S.D.N.Y. 1983) ("[B]ecause of the interpleader nature of this action, this court finds no reason to begin its consideration with a presumption that plaintiffs' choice of forum is the convenient one.").  That is because in a run-of-the-mill interpleader action, "the Court determines whether the jurisdictional requirements of Section 1335 have been met and, if it finds they have been, the Court discharges the plaintiff from liability."  *N.Y. Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 716 (E.D.N.Y. 2012).  The court then "adjudicates the claims among the remaining adverse parties."  *Id.* at 717.  Once an interpleader plaintiff has satisfied the Section 1335 jurisdictional requirements of an interpleader claim, "[t]he court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be independently liable to a claimant or has failed to satisfy the various requirements of interpleader, including, when required, deposit of the stake."  4 Moore's Federal Practice § 23.03[2][a] (3d ed. 2005).  Thus, in the strict or true form of an interpleader action, "the stakeholder has no interest in the money or property at issue but simply deposits the money or property with the court for distribution to the claimants" and is then dismissed.  *AmGuard Ins. Co. v. SG Patel & Sons II*

*LLC*, 999 F.3d 238, 244 (4th Cir. 2021) (citing *Killian v. Ebbinghaus*, 110 U.S. 568, 571 (1884)).

In those circumstances, there would be little reason to give weight to the choice of forum of the named plaintiff.  She is just a stakeholder, and not a disputant.  Once she is discharged from liability, her convenience and her interests would be of little matter.  *See Coe*, 724 F. Supp. 3d at 214.

Ordinarily, also, the interests of one among many claimants to an interpleaded fund is not given presumptive weight.  The point of interpleader is to give each person who may claim an interest in a fund an equal opportunity to establish her right to that fund.  *See Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988) ("Once an interpleader fund has been deposited with the district court, the court holds it for whichever party it determines is the rightful owner."); *United States v. Barry Fischer Law Firm, LLC*, 2012 WL 591396, at *6 (S.D.N.Y. Feb. 23, 2012) ("The very purpose of interpleader is to resolve . . . competing claims of entitlement.").  There would be no reason then to prioritize the interest of one claimant over another.  Each ordinarily enters the case with equal dignity and with equal rights.  *See* 7 Wright & Miller's Federal Practice & Procedure § 1702 (3d ed. 2026) ("[T]he device can be used to protect the claimants by bringing them together in one action and reaching an equitable division of a limited fund."); *Midland Ins. Co. v. Friedgood*, 557 F. Supp. 1407, 1411 (S.D.N.Y. 1984) ("In an interpleader action, each claimant must succeed in establishing his right to the property by a preponderance of the evidence," and "the dismissal of all claims but one does not entitle the remaining claimant to judgment.").

This is not the ordinary case for two reasons.  First, Plaintiff is not a pure disinterested stakeholder.  This is an "action in the nature of interpleader" in which the stakeholder is also an interested claimant.  *AmGuard*, 999 F.3d at 244; *see* 28 U.S.C. § 1335(a) ("district courts shall

11

have original jurisdiction of any civil action of interpleader or *in the nature of interpleader*" (emphasis added)).  In such an action, "the plaintiff is not merely a stakeholder but also has an interest in the money or property, and it may initially deny whether some or all of the property is owed to any or all claimants." *AmGuard*, 999 F.3d at 244; *see also* 7 Wright & Miller's Federal Practice & Procedure § 1701 (3d ed. 2026) (noting that statutory interpleader is available even if the plaintiff is interested in the outcome of the litigation).  Where the interpleader plaintiff is an interested claimant, and "the court determines that at least some of the plaintiff's money or property is owed to the claimants, the claimants are then directed to interplead among themselves for the appropriate allocation of the money or property." *AmGuard*, 999 F.3d at 244.  In sum, "when the plaintiff claims an interest in all or part of the corpus—as is the case in an action in the nature of interpleader—it stands in conflict or 'controversy' with the other claimants to the corpus such that the plaintiff and the defendant-claimants are adverse," and "[i]n this role, the plaintiff stands as a claimant vis-à-vis the corpus just as does every other claimant." *Id.* at 246. In these circumstances, it would not be appropriate to disregard the interests of the plaintiff.  *See Bankers Tr. Co. of W.N.Y. v. Crawford*, 559 F. Supp. 1359, 1363 (W.D.N.Y. 1983) ("The case at bar is somewhat different from the usual interpleader case in that the bank, the stakeholder, has deposited interest on the disputed amount but has reserved its right to contest an award of interest at such a high rate.  Because the bank has reserved this right, it does in fact have an ongoing— albeit, minimal—interest in this litigation."); *Nationwide Mut. Ins. Co. v. Eckman*, 555 F. Supp. 775, 777 (D. Del. 1983) ("Therefore this Court concluded that if a plaintiff interpleader contends that he is not liable to the defendants for the amount deposited with the Court, he remains interested in the fund and a party to the lawsuit.").  In her capacity as claimant, Plaintiff has interests just like every other claimant.

12

Second, this motion to transfer the interpleader action is unique in that there exists a forum selection clause in Creel's Employee Confidentiality and Non-Compete Agreement with Sequent. The clause eliminates any weight to be given to Creel's choice of forum or any consideration of her personal private interests. *See Atl. Marine*, 571 U.S. at 64. The agreement states that "[a]ny action or proceeding by either of the Parties arising out of, related to, or to enforce this Agreement shall be brought only in any state court located in Miami-Dade County, Florida, or in the United States District Court for the Southern District of Florida, Miami Division." *Id.* at 5. That forum selection clause is valid and enforceable. *See Vulcan Cap. Corp. v. Miller Energy Res., Inc.*, 2014 WL 4384159, at *2 (S.D.N.Y. Sept. 4, 2014) ("When assessing a motion to transfer on the basis of a forum-selection clause, a court must first determine whether the forum-selection clause is valid and enforceable"). Creel does not contend otherwise. While Creel argues that the clause "does not cover the claim in the interpleader action," Dkt. No. 36 at 10, that argument is without merit. The scope of the clause is determined by Florida law, "the substantive law designated in an otherwise valid contractual choice-of-law clause." *Est. of Nelson v. MillerKnoll, Inc.*, 2023 WL 3159678, at *3 (S.D.N.Y. Apr. 28, 2023) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217–18 (2d Cir. 2014)).[4] The forum selection clause is broad in that it applies not only to disputes "arising out" of the confidentiality/non-compete agreement, but also to disputes "related to" that agreement. *See Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (explaining that an arbitration provision that applies to any claim "relating to" a contract is broader than a provision that applies only to claims "arising out of" a contract).

---

[4] The contract also specifies that "[t]his Agreement, for all purposes, shall be construed in accordance with the laws of State of Florida without regard to conflicts-of-law principles." Dkt. No. 25-2 at 5.

13

The confidentiality and non-compete agreement provides that Creel "will not, in any geographical area in which Sequent conducts its business or sells or markets its services, directly or indirectly, either for herself or any other person or entity[,] . . . interfere with Sequent's relationship with any such customer or client," Dkt. No. 25-2 at 3, and requires Creel, upon voluntary or involuntary termination, to "provide or return to Sequent any and all Sequent property," *id.* at 4.  Among other relief, Creel seeks an order in this action determining that she is legally entitled to commissions she received while working for Sequent and preventing Sequent from suing her for return of the funds.  Compl. at 10.  These claims are clearly "related to" the cited contractual provisions.  *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (explaining that the term "related to" connotes "some direct relationship"); *cf. Miller Family Indus., Inc. v. Ives*, 2025 WL 2205937, at *5 (S.D.N.Y. Aug. 4, 2025) (A clause that is directed to claims that "arise under" or "relate to" or are "in connection with" a contract is considered broad, and brings within it all possible claims that touch on the rights set forth in the parties' contract." (cleaned up)).

Moreover, the forum selection clause in the confidentiality agreement is mandatory.  It expressly states that any covered dispute "shall" be brought only in Florida courts.  *See Mgmt. Comput. Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 631 (Fla. Dist. Ct. App. 1999) ("If the venue clause is phrased in mandatory terms, each party has a contractual right to demand that the case be litigated in the forum referred to in the contract."); *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1297 (11th Cir. 2021) (holding that a forum selection clause is mandatory "from the use of the verb 'shall'").

## B.      The Convenience of Witnesses and Parties

Were this a bilateral suit as between solely Creel and Sequent, there would be little question that the case could be heard outside of Florida only under "extraordinary

14

circumstances," and that the court would be limited to considering "public-interest factors only." *Atl. Marine*, 571 U.S. at 62, 64.  The fact that Plaintiff has brought this case as a statutory interpleader and named the other Interpleader Defendants complicates the analysis.  The Court must also consider the interests of the Interpleader Defendants.  But, on the facts of this case, the inclusion of the Interpleader Defendants does not change the conclusion that the private factors weigh in favor of the Southern District of Florida.

In somewhat analogous contexts, the Third and Fifth Circuits have addressed how courts should handle motions to transfer venue where there is a forum selection clause as between two of the parties but not others.  In such instances, the court must consider the private interests of the litigants who are not parties to the forum selection clause and whether, if those interests diverge from those selected in the clause, the interests of judicial efficiency outweigh the interest in enforcing the forum selection clause.  In *In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014), the Fifth Circuit explained that in a case where "all parties signed a forum selection contract, the analysis is easy: except in a truly exceptional case, the contract controls."  *Id.* at 679.  But where "not all parties to the lawsuit have entered into a forum selection agreement," the answer "is more complicated."  *Id.*  That is because a "litigant not party to such a contract did not, of course, make any such advance agreements and their private interests must still be considered by the district court."  *Id.*  The court concluded that in such a situation:

> First, pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum.  Second, the district court must consider the private factors of the parties who have not signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis.  Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit.

*Id.* at 681.

The Third Circuit, relying on the Fifth Circuit's decision, reached a similar conclusion in *In re Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017). That circuit set out a four-step test. First, the court "assumes that *Atlantic Marine* applies to parties who agreed to forum-selection clauses." *Id.* at 404. Second, "the court performs an independent analysis of private and public interests relevant to non-contracting parties, just as when adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses." *Id.* Third, if steps one and two point in different ways, "the court considers severance." *Id.* And fourth, "the court considers efficiency interests in avoiding duplicative litigation" and "the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interest." *Id.* "Only if it determines that the strong public interest in upholding the contracting parties' settled expectations is 'overwhelmingly' outweighed by the countervailing interests can the court, at this fourth step, decline to enforce a valid forum-selection clause." *Id.* (quoting *Atl. Marine*, 571 U.S. at 67).

There is no credible argument that the Interpleader Defendants are anything other than disinterested in the choice of forum. Creel asserts that the convenience of the parties favors New York because "three Defendants are either New York corporations with their headquarters in the Southern District of New York or an insurance general agency brokerage base and domiciled in the Southern District of New York and . . . another three Defendants are located geographically close to the Southern District of New York, in New Jersey, Delaware, and Pennsylvania." Dkt. No. 36 at 7–8. But, as noted, of the three Defendants with ties to New York, one has disclaimed any interest in the commissions, a second has answered with a denial that a demand was made of it with respect to the funds, and the third has not responded. None of the Interpleader Defendant Insurance Companies has opposed Sequent's argument that this case belongs in the Southern

16

District of Florida or indicated that it would be inconvenienced in any way if this case were transferred.  Moreover, according to the complaint, the Interpleader Defendant Insurance Companies have no independent interest in the deposited funds.  Their only interest is based on Sequent's claim to the funds.  If the Court rules that Sequent is entitled to the commissions and the funds thus are released to Sequent, any liability that they would have would presumably be discharged.  And if the Court were to rule that Creel is entitled to the commissions, then any liability they would have to Sequent also presumably would be discharged.  It is no doubt for that reason that NY Life has disclaimed any interest in the funds.  From the complaint, the funds belong either to Creel or to Sequent; under no circumstances would the Interpleader Defendant Insurance Companies have a right to them.  Sequent and the other Interpleader Defendants do not stand on equal footing in this dispute.  If there was a difference between the two as to an appropriate forum, the tie would go to Sequent.  And given the nature of interpleader here, severance is not possible, and the only answer under the law would be transfer to the Southern District of Florida.

Indeed, it appears that the naming of the Interpleader Defendant Insurance Companies may have been a contrivance by Creel to sue Sequent before Sequent could sue Creel and to avoid the impact of the forum selection clause.  The "selected forum has little or no connection with the parties or subject matter" of the suit. *Nuss v. Guardian Life Ins. Co. of Am.*, 2021 WL 1791593, at *3 (S.D.N.Y. May 5, 2021) (quoting *Farrior v. George Weston Bakeries Distrib., Inc.*, 2009 WL 113774, at *3 (E.D.N.Y. Jan. 15, 2009)).  As alleged in the complaint, the only connection to this forum is that Plaintiff is a sometime resident of New York and that three of the Interpleader Defendants, none of which has actually made any demand for the funds, are New York corporations.  Plaintiff is a citizen of Florida, not New York. *See Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 252, 256 n.6 (1981) (a plaintiff's choice to sue in a forum outside of their home state may be entitled to less deference); *Iragorri*, 274 F.3d at 71 (same); *see also Henry v. JP Morgan Chase & Co.*, 2015 WL 13949710, at *4 (S.D.N.Y. May 11, 2015) (finding that the choice of forum is less compelling where the forum "is not their home district").  None of the Interpleader insurance companies have made a demand on Creel or appear to have a basis to make such a demand.  And the lawsuit was filed just after Sequent demanded return of the funds and terminated Creel's employment and seeks an order that Creel (rather than Sequent) is entitled to the commissions and that would prevent Sequent from suing Creel.  Had Creel filed this lawsuit solely against Sequent and sought a declaratory judgment, the Court would have applied the forum selection clause and, if not, likely would have dismissed the complaint as an impermissible attempt "to avoid the more natural plaintiff's choice of forum."  *Starr Indem. & Liab. Co. v. Exist, Inc.*, 2023 WL 4029821, at *4 (S.D.N.Y. June 14, 2023), *aff'd*, 2024 WL 503729 (2d Cir. Feb. 9, 2024) ("[T]o allow the instant case for declaratory judgment to proceed would, in effect, allow the insurer to pick the forum for litigation, not the insured, in the vast majority of cases.").  On the facts here, that Creel has added the other purported claimants leads to no different result.

  **C.**  **The Remaining Private Interest Factors**

  The remaining private interests pertain to the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).  The Court addresses them in an excess of caution and from the perspective of the Interpleader Defendants; no weight is afforded to the relative ease of access from the perspective of Creel as signatory to the forum selection clause specifying a Florida forum.  *See*

*id.* at 63 (explaining that where there is a "valid forum-selection clause," the plaintiff signatory's "choice of forum merits no weight"). None of the remaining private interest factors overcomes the interest of Sequent in the forum selection clause.

Sequent asserts without contradiction that "the primary witnesses as well as relevant documents and sources of proof are all located in Florida, where Creel worked with her associate to generate business on behalf of Sequent." Dkt. No. 25 at 8. In particular, as Sequent asserts, "Creel, her associate, and members of the Sequent team are all tied to Florida" and fall within the subpoena power of the Southern District of Florida, and not the Southern District of New York. *Id.* at 9. The private interests of Sequent do hold weight, and thus the convenience of the parties as explained by Sequent counsel in favor of transfer to Florida. *See Howmedica*, 867 F.3d at 404 (the court "should consider the private and public interests 'of the parties who have *not* signed a forum-selection agreement.'" (quoting *Rolls Royce*, 775 F.3d at 681)). No other Interpleader Defendant has identified any witnesses in any location against which their private interest might be measured.

Sequent notes too that relevant documents have a nexus to Florida, as Creel negotiated the insurance carrier and general agency agreements at issue on behalf of Sequent (Florida). Dkt. No. 25 at 8. However, "access to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport." *IKB Int'l S.A. v. Wilmington Tr. Co.*, 2017 WL 4084052, at *6 (S.D.N.Y. Sept. 14, 2017) (quoting *Const. Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F. Supp. 1247, 1251 (S.D.N.Y. 1995)); *see also Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."), *aff'd sub nom.*

19

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010).  At base, the dispute is one between a Florida LLC and a Florida citizen.  Although Sequent has not identified the specific persons or documents that would be more conveniently accessed in Florida, there is no basis upon which the Court can find any strong countervailing private factors counseling in favor of jurisdiction in this District.  *See Howmedica*, 867 F.3d at 408 (finding that where the company "employees who may serve as witnesses are located in California," and where the claims "arise from their alleged actions in California," the private interest factors weighed in favor of jurisdiction there).

### D.      The Public Interest Factors

Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  *Atl. Marine*, 571 U.S. at 62 n.6.

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer."  *SBAV LP v. Porter Bancorp, Inc.*, 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (quoting *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998)).  "The determination of the locus of operative facts for purposes of choice of venue is not a mechanical exercise divorced from the substance of a dispute."  *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, 2022 WL 17067984, at *8 (S.D.N.Y. Nov. 17, 2022).  "The factor is addressed to determining the venue which has the greatest interest in the resolution of the dispute[.]"  *Id.*  Put simply, "to determine where the locus of operative facts lies, courts look to the site of events from which the claims arises."  *Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 578 (S.D.N.Y. 2015).  There is a "local interest in having localized controversies decided at home."  *Atl. Marine*, 571 U.S. at 62 n.6.  As indicated, *supra* pp. 7–9, Florida has the greater

interest in the operative events.  The case arises out of a dispute between a Florida resident and a Florida limited liability corporation regarding the ownership of funds generated out of work performed in Florida.  Nothing ties the case to this District other than that Creel had some communications with Sequent prior to assuming employment and while Creel was in New York.

The fact that Plaintiff herself filed a subsequent lawsuit in New York on the same day that she submitted her opposition to the motion to transfer venue does not entitle her to maintain this lawsuit in this venue.  *See Creel v. Martin*, No. 26-cv-3626 (S.D.N.Y. filed May 1, 2026). The claims are overlapping.  In her second-filed lawsuit, Creel asserts causes of action against Sequent and its Executive Chairman Richard Martin for fraudulent inducement, breach of contract, and unjust enrichment.  No. 26-cv-3626, Dkt. No. 1 ¶¶ 96–111.  That complaint asserts that Sequent and Martin breached an agreement that Creel would be compensated by commissions generated from Sequent's own client base and that as a result Creel was forced to source and generate revenue herself; it asserts that the $1.096 million in commission payments made to her directly were from a longstanding client of hers.  *Id.* ¶¶ 83–84, 90.  In her complaint in this proceeding, Creel makes the same allegations that she was induced to join Sequent by the representation that commissions would be generated from Sequent's client base and that she is entitled to the $1.096 million received from the pre-existing client "based on her claims against Sequent for services rendered, breach of contract, fraudulent inducement, and unjust enrichment."  Compl. ¶¶ 24–26, 37.  That is, she raises the same allegations just with a different vehicle.

In some cases, the "existence of a related action in the . . . district is a strong factor to be weighed with regard to judicial economy."  *Williams v. City of New York*, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006).  But to the extent that jurisdiction in the second-filed lawsuit is

appropriate here and affects the property involved in this action, the court in Florida would have the authority to restrain Creel from prosecuting such action just as Creel has asked this Court to restrain Sequent from instituting or prosecuting any action from affecting the funds. *See* 28 U.S.C. § 2361 (explaining that in "any civil action . . . in the nature of interpleader . . ., a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property . . . involved in the interpleader action until further order of the court."). Obviously, a determination in the second-filed action that Creel is entitled to the commissions under theories of fraudulent inducement, breach of contract, and unjust enrichment would "affect[]" the property at issue in this first-filed action such that the Florida court would have authority to enjoin prosecution of that case pending resolution of the interpleader action. *See Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1066–67 (S.D.N.Y. 1992) (finding second suit about same asset at issue in interpleader action to be one affecting the property); 7 Wright & Miller's Federal Practice & Procedure § 1717 (3d ed. 2026) (collecting cases). And to the extent that it does not, this Court would have mechanisms to efficiently coordinate across cases. *See Howmedica*, 867 F.3d at 409 (noting that where there is "risk of duplicative litigation," "that risk can be reduced or eliminated with 'procedural mechanisms . . . such as common pre-trial procedures, video depositions, stipulations, etc.' which can 'echo those used by judges in cases managed pursuant to multidistrict litigation statutes,' and which can encompass joint oral argument and bellwether trials if necessary and appropriate." (quoting *Rolls Royce*, 775 F.3d at 681)).

Finally, where, as here, the case is "in its earliest stages, it is generally not inefficient to transfer the case." *Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 411 (S.D.N.Y. 2016). The other Interpleader Defendants have not appeared in this

22

proceeding, nor is there any strong interest as presented by Creel that they would have in preventing the transfer of this suit to the Southern District of Florida.

## CONCLUSION

The motion to transfer venue to the Southern District of Florida is GRANTED. The Clerk of Court is directed to transfer this action to the United States District Court for the Southern District of Florida. This Order closes this case.

SO ORDERED.

Dated: May 27, 2026
          New York, New York

_____
                    LEWIS J. LIMAN
              United States District Judge

23